Bland, Chancellor.
The defendant’s solicitor called upon the Chancellor at his office, and asked leave to lodge with him an answer to a bill -which, he said, would soon be laid before him. In a few hours after the bill was accordingly presented. The Chancellor apprised the plaintiff’s solicitor of these circumstances; and, after hearing his remarks, has read and considered the bill and answer.
It often occurs, in cases where the suit has been amicably instituted, that the bill and answer are filed together, and that some order is passed thereon at once. But this is not said to be, nor does it, in any respect, wear the aspect of an amicable call for the aid, or sanction of the court, to have that done on a statement of facts about which the parties are agreed, or which they are willing should be done. The parties here are substantially opposed as to every object of this suit; and they apprised the Chancellor, that they were so before he read either the bill or answer.
The prompt manner in which the defendant has chosen to come in and answer is unusual; perhaps, indeed, such an instance never happened before. But I am not aware of any practice of this court, or, of any principle, governing the administration of justice, which prohibits a defendant from answering instantly to any complaint that may be made against him. On the contrary, courts of justice, whether of common law or of equity, not only allow a party to come in and immediately defend himself; but consider a promptness in doing so as highly commendable. The various formalities, intervals, and pauses of the process, warning, summoning, or coercing a defendant to appear and answer, are intended for his benefit; and to allow him time to deliberate, and to move in the most circumspect manner in the defence of his rights; and being for his advantage only, he may waive them all; and, as in this instance, come in and answer instantly. By doing so he accelerates the progress of the case which must be for the advantage of him who complains of a delay or denial of right. This plaintiff may now except to this answer, set the case down to be heard on bill and answer, or put in a general replication and proceed forthwith to take testimony. In short any defendant to a bill *532 of complaint in this court may appear gratis and get rid of the suit as soon as he can. (a)
But it is said, that this is an injunction bill, and an injunction, if allowable at all, is always granted ex parte on a consideration of the bill alone. This practice has, however, arisen out of the circumstances of our country, and the peculiar urgency of such cases. The exigencies of the case, as set forth by the plaintiff, in his bill, may be, and most commonly are, such as to call for immediate interposition; and therefore, the Chancellor must act on the representation of one party only. But in all such cases the opposite party is allowed an early opportunity of being heard; and if the nature of the case require it, the manner and time of his being heard is unusually facilitated and shortened. But if a defendant should hear of such a bill being on its way to the Chancellor, it does not seém to me, that there can be any sound regulation which should hinder him from following the bill to the tribunal, and instantly presenting his answer so as to prevent the imposition of the threatened restriction. An injunction may be dissolved on the coming in of an answer which positively denies all the facts upon which the equity of the bill is founded; hence it would be strange indeed to refuse to look at such an answer presented together with-the bill, and to grant an injunction which must soon, and inevitably be dissolved. I am therefore of opinion, that this answer must be now read and considered. Upon which it will be sufficient to remark, that on the bill alone I should have doubted the propriety of granting an injunction ; but upon looking into the answer I can have no doubt.
Ordered, that no injunction be issued as prayed by this bill of complaint.
The plaintiff put in a general replication to the defendant’s answer; and some time after brought the case before the court by moving for a decree to account.
27th July, 1826.
Bland, Chancellor.
Decreed, that the parties account with each other; and the case is hereby referred to the auditor, who is directed, from the proofs now in the case and such other proofs as may be produced by either party upon giving reasonable notice to the parties to state one or more accounts as *533 the nature of the case may suggest; and to report his proceedings to the Chancellor.
By consent a commission was issued to Joseph G. Harrison to take testimony; who accordingly took the depositions of several witnesses and returned them with the commission. After which he filed a petition in which he stated, that his fees, as commissioner, against the defendant amounted to the sum of $16, which he had neglected to pay, although repeatedly called on so to do. Whereupon he prayed for an order for payment.
15th May, 1829.
Bland, Chancellor.
Ordered, that the defendant Thomas T. McPherson forthwith pay to the commissioner Joseph G. Harrison, the sum of sixteen dollars, being for his commission fees as above stated.
On the 9th of March, 1832, the plaintiiF filed a supplemental bill in which he stated, that the defendant Thomas T. .McPherson had on application to Anne Arundel County Court, been finally discharged under the insolvent law, that Robert McPherson had been appointed trustee for the benefit of his creditors; and that soon after Thomas T. McPherson died utterly insolvent; that no administration had been, or would be granted on his estate; by reason whereof this suit had abated. Whereupon he prayed, that it might be revived against Robert McPherson, the trustee of the late defendant, &c. The subpoena issued on this bill wras returned summoned to March term, 1832.
The plaintiff, by his petition, filed on the 20th of July, 1832, prayed to have leave to dismiss his bill, and for the usual order in such case.
26th July, 1832.
Bland, Chancellor.
This case having been submitted with notes by the plaintiff’s solicitor, and no one appearing for the defendant before the close of the sittings of the term, the proceedings were read and considered.
The application of a plaintiff to dismiss his bill is one which is, ordinarily, granted as of course, at any stage of the proceedings, on the payment of costs, (b) But in this case there having been a decree to account, each party has been thereby virtually clothed with the rights of an actor; after which the defendant having *534 obtained the benefit of the insolvent law, other persons became thereby interested in the matter in litigation; and the defendant, having died, after he had been thus discharged under the insolvent law, and the suit having been revived by a supplemental bill against his trustee alone, this application by the plaintiff to dismiss his bill presents questions of much importance in practice, and of a nature involving a consideration of some of the positive provisions of the insolvent law, and of the principles arising out of those provisions.
In all cases where a defendant is chargeable with the rents and profits of property; and wherever it may be necessary to ascertain the amount to be awarded to the plaintiff, it is of course to refer the case to the auditor, with directions to state such an account as the nature of the case may require, and such other accounts as either party may desire. But a reference to the auditor in such cases does not, of itself, place the parties in the reciprocal relation to each other of plaintiff and defendant, as on a bill for an account upon a dealing in trade, as in this instance, where, after a decree to account, both parties are considered as actors in relation to such account; and the final decree may be in favour of the one or the other, according as the balance may appear. And, therefore, if the suit should abate after such a decree, by the death of either plaintiff or defendant, the surviving party, or the representatives of the deceased may have it revived by a bill of revivor; because, the defendant, after such a decree, has as direct an interest in the continuance of the suit as the plaintiff, and may ultimately be as essentially benefited by it. (c)
But, as in such cases, that reciprocal interest in the suit which the decree to account gives to each of the parties enables either of them to revive and continue it, so the plaintiff cannot, as under other circumstances, be allowed at his pleasure, after such a decree, to dismiss his bill on the payment of costs ; but can only get rid of it by a final decree, or by availing himself of the negligence and default of the defendant after he has been called upon to proceed ; and therefore, after a decree which thus gives the defendant *535 an interest in the further prosecution of the suit, the plaintiff can only have entered upon the docket the common rule further proceedings, so as thereby to lay a foundation for obtaining leave to dismiss his bill at the next term. (d)
In England any trader may, under certain circumstances, he subjected by his creditors to the operation of the bankrupt law so as thereby to have his property taken from him and transferred to assignees for the benefit of his creditors; and consequently, so long as the commission of bankruptcy, sued out against him, remains in force, as he has been thereby totally divested of all property then held by him, not as trustee or in right of another, and which might be made liable to the payment of his debts, he cannot nor ought not to be allowed to sue or he made a party to any suit at law or in equity in regard to any such property; unless under peculiar circumstances. (e)
Here, to enable a debtor to obtain the benefit of the insolvent law he must be then, at the time of his application, in actual confinement, (f) or he must give two months notice of his application in the manner prescribed. (g) And it is declared, that, on the applicant having taken the prescribed oath, the court, upon the recommendation of the creditors, if they make any, shall appoint a trustee for their benefit; which appointment shall operate as an assignment of all the insolvent’s property so as to vest the title to the same in such trustee, who shall manage, sell, and distribute the same in the manner prescribed, and under the control of the court to which the application has been made. (h) And after the trustee has given bond, and the applicant has conveyed to him all his estate for the benefit of his creditors, and the trustee has certified, that he is in possession of all the estate of the applicant mentioned in his schedule, (i) the court may order that such applicant shall he discharged, as well from all debts, covenants, promises, and agree *536 ments due from, or owing or contracted in his individual, as also in his partnership capacity, before the time of his application; pro~ vided, that no’ person who has been guilty of a breach of the law, and has been or is liable to be fined shall be discharged from any such fine; and provided, that any property which he shall thereafter acquire by gift, descent, or in his own right by bequest, devise, or in any course of distribution shall be liable to the payment of such debts; and provided also, that the discharge of such applicant shall not operate so as to discharge any other person from any debt, (j) But, that all property of the applicant, not mentioned in his schedule, shall be subject to execution and attachment, in the same manner his property was prior to his application. (k)
From which it appears, that the property of a debtor cannot here, as in England, be placed under the insolvent law in any way by the mere act of any of his creditors; that it can only be so disposed of upon the voluntary application of the insolvent debtor himself; and that the transfer, when'so made, being less open to question, because of its being voluntary, and in all respects as absolute as an assignment under the bankrupt law of England, the reason why an insolvent here should not be allowed to sue or be made a party to a suit in relation to property, not then held by him as trustee, or in right of another, and so transferred, is much stronger than that which arises from an assignment under the analogous provisions of the English bankrupt law. (l) The English bankrupt law is, in general, administered upon the principle, that there will be no surplus of the bankrupt’s estate to be returned to him; our insolvent law, in terms, proceeds upon the same principle by expressly declaring, that its benefit is to be granted only to those who, by reason'of their misfortunes, are unable wholly to pay their debts, (m) Nevertheless, under some circumstances, an insolvent here, like a bankrupt in England, may be permitted to institute a suit, or be made a party for his own protection, or for the purpose of detecting and preventing the practice of fraud; or where the necessary relief cannot be obtained according to the mode of proceeding prescribed by the insolvent law. (n)
*537 Hence it may be regarded as a general rule, that in all cases where a debtor has, before the institution of a suit by or against him, been finally discharged under the insolvent law, he cannot he allowed to sue or be made a party to a suit in respect to any property which has been rightfully transferred in pursuance of the insolvent law for the benefit of his creditors; because having parted with all his interest therein, he has thereby divested himself of all capacity to sue or be sued in relation to any such property. But where a debtor has, pending a suit to which he is a party, been finally discharged under the insolvent law, other principles arise which have occasioned some perplexity at law as well as in equity.
It seems to be well settled in England, that a discharge and assignment under the insolvent law does not, of itself, operate as an abatement of any action at common law which may have been previously instituted by the insolvent; because, although the discharge and assignment do legally divest him of all property claimed by such action, and transfer it to his trustee for the benefit of his creditors; yet the insolvent may well be allowed to proceed with the prosecution of the suit for the benefit of his creditors until the trustee interferes and claims adversely to him, in which case, he will not be allowed to recover that which is in law the property of the trustee, and is claimed as such, (o) It is also laid down, that the insolvency of the defendant does not, of itself, abate any action at common law. (p)
By our insolvent law it has been declared, that the trustee of the insolvent’s estate may, in his own name or in that of the applicant, sue for, collect and recover all debts, demands and property due or belonging to the applicant and assigned by him to such trustee; and that such trustee may also prosecute to judgment any suit commenced by the applicant before his appointment. (q) These provisions seem to be confined to actions at common law; and also to such cases of that description only in which the plaintiff, *538 or he who must otherwise have been the plaintiff, has been finally-discharged under the insolvent law. There is, however, no legislative enactment prescribing any mode by which a trustee of an insolvent plaintiff may be allowed to come in, and prosecute a suit which the insolvent had previously instituted; or by which a trustee of an insolvent defendant may be allowed to come in and make defence in a pending suit, the recovery in which may be of no consequence to the insolvent; but which may greatly reduce the dividends of his creditors. According to the course of the courts of common law here, as in England, the trustee of an insolvent plaintiff has always been permitted to come in at any time and claim for the benefit of his creditors, either on motion, or by scire facias. The most usual course seems to be to come in on motion; but if the claim of the trustee, as such, be questioned, then the court will intercept or stay the paying over of the proceeds so as to give the trustee time to sue out a scire facias for the purpose of having the matter in controversy regularly determined. (r)
The insolvent law has no distinct provision whatever in relation to any kind of suit in equity to which an insolvent may be a party, and which may be depending at' the time of his final discharge. But, although in equity as at law, a party to a then depending suit may, by his having obtained the benefit of the insolvent law, be thereby deprived of all right to the property in litigation held or claimed in his own right, and not as trustee or in right of another, and have been so, apparently, entirely divested of his capacity to sue or be sued in relation to it; yet here, as at law, such a discharge does not, as in the case of death, operate as an abatement of the suit. Upon the ground, as it would seem, that a discharge under the insolvent law operates only as a transfer of the insolvent’s interest for the benefit of his creditors; but does not, as in case of death, effect a total prostration and extinction of all his rights. Hence, although an insolvent discharge cannot be said to be strictly an abatement of the suit, yet, that circumstance renders it as defective as if it had abated by death; which defect, when made known to the court, must be remedied before the suit can proceed. The proper mode of reinstating a suit in equity, in such cases, is by a supplemental bill in the nature of a bill of revivor. So that, in general, upon the final discharge under the insolvent law of a plaintiff or defendant being suggested upon the record, the case may be ordered to stand over, with notice to the *539 trastee of such insolvent to come in by a certain day to proceed to reinstate the case, or that the bill be dismissed. Or, on the insolvency of a party his trustee may voluntarily come in by a supplemental bill in the nature of bill of revivor, and thus obtain the right to prosecute or defend the suit for the benefit of the creditors of the insolvent. (s)
This suit has, however, not only become defective by the insolvency of the defendant, who, as well as the plaintiff, was at that time an actor in relation to the account, and the benefit which might result from it; but it was afterwards totally abated by the death of the defendant; and the plaintiff might, if he had thought proper, have suffered it finally to go to rest in that manner. For, although, in consequence of the late defendant’s having been made an actor by the decree to account, his trustee or legal representative, might, after his insolvency and death, have come in by bill and had the suit revived; yet since it had, by operation of law and by casualty, been brought to a final termination, the plaintiff was certainly under no obligation to revive or renew the litigation. He has, however, by his supplemental bill, in the nature of a bill of revivor, brought this case again before the court, and it now stands in the situation of a bill, answer, and decree thereon for a mutual account between partners in trade. And, therefore, the bill can now only be dismissed in the same manner as after a similar decree between the original parties ; that is, upon notice to the opposite party by a rule further proceedings.
Whereupon it is Ordered, that the defendant proceed in this case on or before the fourth day of the next term, or the plaintiff may, at any time thereafter, dismiss his bill with costs. And it is further Ordered, that the register enter upon the docket, as at the instance of the plaintiff, the rale further proceedings.
The rule was entered accordingly. After which, no further proceedings having been had by the defendant, the bill was on the 5th of October, 1832, by order of the plaintiff’s solicitor, dismissed.

 Fell v. The Master of Christ’s College, 2 Bro. C. C. 278; Hanwarst v. Welleter, 5 Mad. 422; Webster v. Threlfall, 1 Cond. Chan. Rep. 67.

 4 Ann. c. 16, s. 23; Kilty’s Rep. 247; Anonymous, 1 Ves., jun., 140; Dixon v Parks, 1 Ves., jun., 402.

 Kent v. Kent, Prec. Cha. 197; Stowell v. Cole, 2 Vern. 219, 297; Dones’ case, 1P. Will. 263; Hollingshead’s case, 1 P. Will. 744; Anonymous, 3 Atk. 691; Thom v. Pitt, Sele. Ca. Cha. 54; Dinwiddie v. Bailey, 6 Ves. 141; Williams v. Cooke, 10 Ves. 406; Horwood v. Schmedes, 12 Ves. 311; Bayley v. Edwards, 3 Swan. 703; Bodkin v. Claney, 1 Ball. & B. 217; Smith v. Marks, 2 Rand. 449; Moreton v. Harrison, 1 Bland, 499 ; 1825, ch. 158.

 Skip v. Warner, 3 Atk. 558; Carrington v. Holly, Dick. 280; Anonymous, 11 Ves. 169; Lashley v. Hogg, 11 Ves. 602; 1 Harr. Pra. Cha. 605.

 Copeman v. Gallant, 1 P. Will. 314; Bennet v. Davis, 2 P. Will. 316 ; Griffin v. Archer, 2 Anst. 478 ; Benfield v. Solomons, 9 Ves. 83 ; Whitworth v. Davis, 1 Ves. & B. 545; Wilkins v. Fry, 1 Meriv. 245 ; Hammond v. Attwood, 3 Mad. 158 ; Bailey v. Vincent, 5 Mad. 48 ; Lloyd v. Lander, 5 Mad. 282; Piercy v. Roberts, 6 Cond. Cha. Rep. 469; Casborne v. Barsham, 9 Cond. Cha. Rep. 289; Winch v. Keeley, 1 T. R. 619; Worthington v. Lee, 2 Bland, 682.

 1805, ch. 110,s. 2; 1808, ch. 71.

 1805 ch. 110, s. 21; 1834, ch. 309.

 1805, ch. 110, s. 2, 4, 7 and 10; 1812, ch. 77, s. 6 ; 1820, ch. 194; 1827, ch. 70, s. 3; 1832, ch. 203, s. 3; 1835, ch. 235.

 1805, ch. 110, s. 5; 1827, ch. 70, s. 1; 1829, ch. 208, s. 3.

 1805, ch. 110, s. 5; 1827, ch. 70, s. 6; 1830, ch. 125 ; 1831, ch. 316, s. 7; Buxton v. Mardin, 1 T. R. 80; Spalton v. Moorhouse, 6 T. R. 366; Nadin v. Battie, 5 East. 147.

 1827, ch. 70, s. 8; Some other provisions have been since made in relation to insolvent debtors in the city and county of Baltimore, by 1834, ch. 293.

 Collet v. Wollaston, 3 Bro. C. C. 228 ; Collins v. Shirley, 4 Cond. Cha. Rep. 592.

 1805, ch. 110, s. 1.

 Bowser v. Hughes, 1 Anst. 101; *537 King v. Martin, 2 Ves., jun., 641; Williams v. Kinder, 4 Ves. 387; Benfield v. Solomons, 9 Ves. 83; Saxton v. Davis, 18 Ves. 81; Whitworth v. Davis, 1 Ves. & B. 548; Lowndes d. Taylor, 1 Mad. Rep. 422; Mackworth v. Marshall, 5 Cond. Cha. Rep. 157; Piercy v. Roberts, 6 Cond. Cha. Rep. 469; Barton v. Jayne, 9 Cond. Cha. Rep. 461.

 Monke v. Morris, 1 Mod. 93; Hewit v. Mantell, 2 Wils. 372; Kretchman v. Beyer, 1 T. R. 463; Winter v. Kretchman, 2 T. R. 45; Waugh v. Austen, 3 T. R. 437; Kitchen v. Bartseh, 7 East. 63.

 Hewit v. Mantell, 2 Wils. 374.

 1805, ch. 110, s. 8; 1827, ch. 70, s. 2. — Some further provisions have been since made as to the continuance of suits where a change is made of a permanent trustee of an insolvent debtor of the city and county of Baltimore, pending a suit instituted by or against such trustee, by the act of 1833, ch. 173.

 Hewit v. Mantell, 2 Wils. 372.

 Child v. Frederick, 1 P. Will. 266; Ex parte Ellis, 1 Atk. 101; Anonymous, 1 Atk. 263; Ex parte Berry, 1 Dick. 81; Hall v. Chapman, 1 Dick. 348; Sellers v. Dawson, 2 Dick. 738; Rutherford v. Miller, 2 Anst. 458; Williams v. Kinder, 4 Ves. 387; Monteith v. Taylor, 9 Ves. 615; De Minckwitz v. Udney, 16 Ves. 466; Randall v. Mumford, 18 Ves. 424; Boddy v. Kent, 1 Meriv. 362; Rhode v. Spear, 4 Mad. 51; Wheeler v. Malins, 4 Mad. 171; Porter v. Cox, 5 Mad. 80; Garth v. Thomas, 1 Cond. Chan. Rep. 410; Hibberson v. Fielding, 1 Cond. Chan. Rep. 502; Sharp v. Hullett, 1 Cond. Chan. Rep. 558; Caddick v. Masson, 2 Cond. Chan. Rep. 252.